No. 22,679.

W. H. DAYTON and GEORGE RASHER, as Partners, etc., *Appellants*, v. JOHN F. MURPHY, *Appellee*.

SYLLABUS BY THE COURT.

CONTRACT — *Real-estate Transaction—Division of Profits—Compromise and Settlement Shown—Demurrer to Plaintiff's Evidence.* The petition prayed judgment for advancements and profits claimed to be due on account of a real-estate transaction. The answer pleaded a settlement with the plaintiffs for a stated sum, which was conceded to be due, and was deposited with the clerk. At the trial the plaintiffs admitted settling with the defendant, but declined the court's offer to give them judgment for the amount of the deposit, with interest. Thereupon a demurrer was sustained to their evidence, judgment was rendered accordingly, and they appealed. Afterwards they took down the deposit. *Held*, the appeal must be dismissed.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed May 8, 1920. Dismissed.

*C. E. Rugh, C. S. Crawford,* and *E. S. Crawford,* all of Abilene, for the appellants.

*S. S. Smith,* and *Bruce C. Hurd,* both of Abilene, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the plaintiffs to recover from the defendant sums of money claimed to be due on account of a real-estate transaction in which the parties had been interested. Judgment was rendered for the defendant, and the plaintiffs appeal.

The plaintiffs were real-estate agents who had Ohmart's land for sale for $17,600. The plaintiffs were able to obtain terms from Ohmart—$1,000 payable in cash, and the remainder payable on March 1, 1919. The plaintiffs proposed to the defendant that he join them in buying the land, and he assented, the expectation being that the land could be resold before pay day for $20,000. In case of resale, the profits were to be shared, one-third to each of the plaintiffs and one-third to the defendant. On February 25, 1918, a contract of sale on the terms stated was given the defendant by Ohmart, who supposed he was selling to the defendant. The plaintiffs were to make the cash payment. Without the defendant's knowledge, they charged Ohmart a commission of $440, and paid the difference only, $560, in cash. Afterwards it became necessary to place a windmill on the land, for which the plaintiffs paid $100. Pay day came, and the land had not been resold. Under an arrangement with the plaintiffs, the defendant paid Ohmart the balance due him, and took the land as his own. Afterwards he sold it for $18,000.

The petition prayed for $1,000 advanced by the plaintiffs to Ohmart, for $100 paid for the windmill, and for a share of the $400 obtained by the defendant for the farm, above the Ohmart price of $17,600. The answer was that the defendant settled with the plaintiffs for their interest in the land for what they had actually expended, that is, $660, made up of the cash paid Ohmart and the cost of the windmill. The defendant gave the plaintiffs his check for the amount, which they first accepted, but afterwards returned. The defendant brought the sum of

$660 into court and deposited it with the clerk, for the plaintiffs.

At the trial the plaintiffs admitted settlement with the defendant. It seems that the defendant, supposing that the plaintiffs had in fact paid Ohmart $1,000, was willing to reimburse them for their advancement, but when he learned the truth of the matter he properly declined to pay more than the amount of the actual advancement. The plaintiffs had no right to charge Ohmart a commission on the sale to themselves and had no right to make, by this means, a secret profit to themselves, not shared by their joint adventurer, the defendant. One of the plaintiffs testified as follows: .

"Q. What did he [Murphy] say then about whether he was to have credit for that commission which was included in the thousand dollars cash or whether you were to get any part of it? A. Well, it seemed that that was to be left out altogether. All that he was to give us then was the $560 that we had actually put in in money."

At the conclusion of the plaintiffs' evidence, the court pointed out to them that their own testimony had destroyed the case made by the petition, and that their remedy lay in a suit on the contract of settlement. The court, however, offered to overlook the variance, and give the plaintiffs judgment for $660, with interest from date of the settlement, but they declined, and suffered a demurrer to their evidence to be sustained.

The plaintiffs have deprived this court of an opportunity to review, and affirm, the judgment of the district court, by taking down the money, pending the appeal. The attorney for the plaintiffs asked the attorney for the defendant if there were any reason why the plaintiffs should not take the fund on deposit with the clerk. The attorney for the defendant said he had no objection. The attorney for the plaintiffs then said he would not accept the money in full satisfaction of the plaintiffs' claim, and if he took it he would do so without prejudice to further insistence on the claim. The defendant's attorney declined to make any agreement on the subject. He said, however, he was willing the plaintiffs should take the money, and he telephoned the clerk that he might pay it to the plaintiffs' attorney. The plaintiffs gave the clerk a receipt for the money on account of the debt sued on and without prejudice to further claim.

Loan & Trust Co. v. Salmon.

The petition was framed on one theory, and the answer on another and different theory. The deposit was made in accordance with the defendant's theory. Whether or not the formalities of the statute were so far complied with as to afford him protection from interest and costs is not material. He deposited the money to pay what he claimed he owed, according to his theory of the case, and not as a credit on any other kind of obligation which might be established against him. He won, and the money remained with the clerk to accomplish the original purpose of the deposit. The attorney for the defendant distinctly declined to make an agreement which would change the terms of the deposit. The plaintiffs could not, by a proposal of terms not agreed to, or by their own self-serving declarations in their receipt to the clerk, change a deposit made to pay a balance due on a settlement to a credit on an unsettled account made up of diverse items. They could obtain the benefit of the money by taking it as it was offered, or not at all, and they elected to take the money.

The appeal is dismissed.